ENTERTAINMENT BY J & J, INC., a California corporation, Plaintiff,

v.

GRIDIRON, INC., a West Virginia corporation d/b/a Gridiron Sports Bar; and Tina Runyon and Donny Kyle, individually, Defendants.

No. CIV.A. 2:00–0800.

United States District Court, S.D. West Virginia, at Charleston.

Oct. 12, 2001.

Harry F. Bell, Jr., William L. Bands, Damon L. Ellis, Bell & Bands, Charleston, WV, for Plaintiff.

## JUDGMENT ORDER

HALLANAN, Senior District Judge.

This is an action alleging unauthorized use of communications in violation of 47 U.S.C. § 605. Plaintiff, Entertainment by J & J, Inc., alleges that the Defendants, Gridiron, Inc., a West Virginia corporation d/b/a/ Gridiron Sports Bar, Tina Runyon, and Donny Kyle, unlawfully and willfully intercepted and exhibited the closed-circuit telecast of the September 18, 1999, championship boxing match between Oscar De La Hoya and Felix Trinidad for commercial gain. Plaintiff filed a motion for entry of default as to Defendants and an entry of default was entered by the Clerk on March 7, 2001. On April 11, 2001, the Court ordered a hearing set for Wednesday, May 2, 2001 for a determination of Plaintiff's request for the maximum amount in statutory damages totaling $170,000 pursuant to 47 U.S.C. §§ 553 and 605. On May 2, 2001, at the aforesaid damages hearing, the Court was informed that Defendants had not been served with notice of the hearing. Therefore, the Court ordered that the hearing be continued until Defendants could be served with notice of the damages hearing. The Court rescheduled the damages hearing for June 19, 2001. For administrative reasons, the Court again rescheduled the damages hearing, moving the date of said hearing from June 19, 2001 to June 21, 2001.

Subsequently, the Court was informed that Defendant Kyle was incarcerated and was scheduled to be released, and was indeed released, on September 18, 2001. Therefore, the Court ordered that the damages hearing be rescheduled once again until Wednesday, September 26, 2001, so that all Defendants could be present. On September 26, 2001, the Court held the aforesaid damages hearing[1] and is now prepared to issue its ruling.

After a careful review of the record of this case, in addition to all relevant case law, and having considered arguments of counsel, the Court **FINDS** that Defendants were properly served with the Amended Complaint and have failed to answer or otherwise defend the action and therefore, the Clerk of the Court correctly entered default against the Defendants. Furthermore, based upon the affidavit of Plaintiff's counsel, the Defendants are neither infants, incompetent persons, or incarcerated convicts, and therefore, the Court **FINDS** that it is proper to enter judgment by default in favor of the Plaintiff.

Plaintiff, a California corporation, entered into a closed-circuit television license agreement to exhibit the closed-circuit telecast of the aforesaid championship boxing match. Plaintiff entered into a license agreement for the purpose of distributing for a commercial gain the closed-circuit broadcast of the event to various business establishments throughout West Virginia. The broadcast was not intended for use by the general public. In West Virginia, the closed-circuit broadcast of the event could only be exhibited in a commercial establishment if said establishment was contractually authorized to do so by Plaintiff. Defendants did not contract with Plaintiff to obtain the rights to broadcast the event. Plaintiff asserts that on September 18, 1999, in violation of Plaintiff's rights, Defendants willfully intercepted and/or received interstate communication of the event and published said event in Defendant establishment for their patrons to view. Subsequently, Plaintiff brought suit in the Southern District of West Virginia pursuant to the Communications Act of

1. Although Defendants had been personally served with notice of the damages hearing scheduled to take place before the Court on Wednesday, September 26, 2001, Defendants did not appear at the hearing, either individually or by counsel.

1934, specifically alleging violations of section 605[2].

Pursuant to 47 U.S.C. § 605 (unauthorized publication or use of communications), the aggrieved party may recover statutory damages for each violation in a sum not less than $1,000 nor more than $10,000. 47 U.S.C. § 605(e)(3)(C)(i)(II). Additionally, § 605 provides that in a case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court may, in its discretion, increase the award of damages by an amount of not more than $100,000 for each violation of the statute. 47 U.S.C. § 605(e)(C)(ii). Finally, the statute provides that the court shall direct the recovery of full costs, including awarding reasonable attorneys' fees to the prevailing aggrieved party. 47 U.S.C. § 605(e)(3)(B)(iii).

At the hearing on September 26, 2001, Plaintiff advised the Court that courts determining damages pursuant to 47 U.S.C. § 605 for similar factual scenarios, including this Court[3], have applied a formula whereby the court takes the Defendant's maximum occupancy and multiplies that amount by a licensing fee of $17.50. Then, the court multiplies the total of the above equation by five, which represents a factor that courts have applied to take into consideration the willfulness of the Defendant's statutory violation. Applying the above-stated formula to the facts of this case, the Court arrives at the following result: 160 persons[4] multiplied by $17.50 multiplied by a factor of five yields $14,000 in damages[5]. Accordingly, the Court **FINDS** and **CONCLUDES** Plaintiff suffered statutory damages in the amount of **$14,000.**

Plaintiff also requests attorneys' fees and costs in the amount of $7,325.35 pursuant to 47 U.S.C. § 605(e)(3)(B)(iii)[6]. The

2. Plaintiff had originally requested that the Court assess damages in the amount of $170,000, pursuant to 47 U.S.C. §§ 553 and 605. At the September 26, 2001 hearing, however, Plaintiff amended its request for damages and informed the Court that it sought damages solely pursuant to 47 U.S.C. § 605. Therefore, the Court will acknowledge Plaintiff's request and will calculate damages pursuant to 47 U.S.C. § 605.

3. See *Kingvision Pay–Per–View, Ltd. v. Admiral's Anchor, Inc.*, September 18, 2001, Civil Action No. 2:00–0799.

4. 160 persons is the maximum occupancy of Defendant's establishment. Plaintiff states that the West Virginia State Fire Marshall confirmed that the maximum fire code occupancy is determined by dividing the square footage available to patrons by 15 square feet per person. Having visited Defendant's establishment, Plaintiff estimated that the square footage available at said establishment is approximately 2,400 square feet. Therefore, Plaintiff determined that the maximum occupancy of the establishment is 2,400 divided by 15, or 160 persons. (See Pl's. Mem. of

Law in Support of Request for Damages Pursuant to Default at 12).

5. The Court is persuaded by Plaintiff's argument that Defendants' violation of 47 U.S.C. § 605 was willful. Due to the manner in which Defendants had to acquire the broadcast of the event, it is evident that it is not possible that Defendants could have innocently acquired said broadcast. It is clear that Defendants willfully obtained the broadcast for commercial advantage or financial gain.

6. At the hearing on May 2, 2001, the Court ruled that it would award Plaintiff attorneys' fees and costs in the amount of $2,614.96, which was the amount of fees and costs generated up to the date of the hearing. Subsequently, on September 27, 2001, Plaintiff submitted its Supplemental Exhibits to Memorandum of Law in Support of Request for Damages Pursuant to Default in which Plaintiff provided the Court with two itemized lists: one of its fees and costs up to the hearing on May 2, 2001 and a second itemized list of fees and costs beginning with the May 2, 2001 hearing and up to and including the September 26, 2001 hearing.

Court has examined Plaintiff's request for attorneys' fees and costs and **FINDS** those fees to be reasonable. Furthermore, the Court emphasizes that Plaintiff's Supplemental Exhibits to Memorandum of Law in Support of Request for Damages Pursuant to Default, filed with the Court on September 27, 2001, is now a part of the record of this case. Accordingly, the Court **FINDS** and **CONCLUDES** that Plaintiff's judgment shall include an award for attorneys' fees and costs in the amount of $7,325.35.

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's motion for default judgment and inquiry into damages. Accordingly, judgment will be entered in favor of the Plaintiff in the total amount of $21,325.35.

The Clerk is directed to send a certified copy of this Judgment Order to all counsel and parties of record.